CASE 26.—ACTION BY HENRY MUNROE AND OTHERS DOING BUSINESS AS JOHN MUNROE & CO. AGAINST ROSA ADAMO.—January ·5, 1910.

## Munroe & Co. v. Adamo

Appeal from Lawrence Circuit Court.

W. C. HALBERT, Circuit Judge.

Judgment for defendant, plaintiffs appeal.—Affirmed.

1. Set-Off and Counterclaim—Subject Matter—Claim by Undisclosed Principal.—Where a purchaser has notice that the seller is the mere agent of another and the title to the property is in the other, the purchaser is not entitled to set off against him a debt due from the agent.

2 Set-Off and Counterclaim—Subject Matter—Claim by Undisclosed Principal.—Where a corporation, the name of which indicated it to be an importer, had possession of goods which it from time to time consigned to defendant, the fact that invoices for several consignments contained a notation that it was payable to a firm engaged in the banking business in the city where the seller resided was not notice to the purchaser that the seller was a mere agent for the banker, and that the banker had title to the goods, so as to prevent the purchaser, in an action for the price, from setting off a claim against the importer.

3. Principal and Agent—Action—Evidence—Sufficiency.—In an action by an undisclosed principal for the price of goods sold by his agent, where the purchaser sought to set off a claim against the agent, evidence held sufficient to show that the claim sought to be set off existed when the sale was completed.

DODD & DODD for appellants.

O'NEAL & O'NEAL, GUSTAV A. ELLERKAMP and N. A. COOPER for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Henry Munroe, Frederic De Reiset, and others, partners trading and doing business under the firm of John Munroe & Co., instituted this action against Rosa Adamo to recover judgment for the sum of $1,-524.60, the purchase price of 1,089 boxes of macaroni sold and delivered to her. Rosa Adamo, in her answer, offered to confess judgment for $490, and pleaded a set-off against the balance of the claim. Her offer to confess judgment was accepted. The case was submitted to the court on the law and the facts, and judgment rendered in favor of Rosa Adamo. From that judgment this appeal is prosecuted.

The facts of this case are as follows: On March 7, 1907, the Merchants' National Importing Company, of New York, N. Y., entered into a contract with Rosa Adamo, by the terms of which she was appointed sole agent for the sale of certain brands of macaroni in Louisville, Ky.; Rosa Adamo at the same time binding herself, during the life of the contract, which was one year, not to handle any other brands of macaroni except those so furnished. It was further agreed between the contracting parties that Rosa Adamo was to take 20 shares of the preferred, and 40 shares of the common, stock of the Merchants' National Importing Company. The par value of the preferred stock was $100 per share. Appellee was to receive the common stock as a bonus. As such stockholder, appellee was to receive, in addition to the guaranteed dividends on the preferred stock and the dividends which might be declared on the common stock, a rebate of 1 cent per box, deducted monthly or quarterly, on all purchases made by her of the Merchants' National Importing Company. It was further agreed that, in the event the contract was not

renewed at the expiration of one year, the company was to refund, on 30 days' notice in writing, the amount paid by appellee for the stock plus the earned dividends on the same. In the contract the Merchants National Importing Company confirmed certain sales that were made to appellee, and directed that further orders be sent sufficiently in advance to enable it to lodge the same with its agent in Naples. The terms of payment were to be net cash payable in New York exchange on receipt of bill and bill of lading covering each separate shipment.

Under the terms of the foregoing contract the Merchants' National Importing Company made 14 consignments of macaroni to appellee. In each case the macaroni was shipped as the property of the Merchants' National Importing Company. There was only one brand of goods so shipped, and the Merchants' National Importing Company claimed to have exclusive control of those goods in the United States, and stamped this claim upon every box in which the goods were shipped. The bill of lading in each instance showed that the Merchants' National Importing Company was the consignor, and the invoices were made out in its name. In the case of the last three shipments, there was stamped upon the invoice: ''The above invoice is payable to John Munroe & Company, 30 Pine St. New York, N. Y., in New York funds.'' Notwithstanding the above directions, appellee made payment on the first two of the last three consignments direct to the Merchants' National Importing Company, of New York. Such payments were accepted without complaint or further direction in the matter. The invoice accompanying the last consignment, the payment of which is in controversy in this case, had the same notice stamped

on it.  Appellee is an Italian woman who can neither
read nor write.  When she received the invoice so
stamped, she did not know of its contents.  The next
day she went to one George Gutig, who, it seems,
assisted her in the transaction of her business and
wrote her letters.  He discovered the notation on the
invoice, and thereupon wrote to John Munroe & Co.
that appellee had an offset against a part of the claim
and was willing to pay only the balance.  Prior to
this time, however, and before any of the invoices
were stamped as set out above, appellee, through
George Gutig, wrote to the Merchants' National Importing Company and demanded a return of her money with an offer on her part to surrender the stock.
This she had the right to do under the contract.

It further appears from the record that John Munroe & Co. are bankers.  In addition to this business,
however, they had for several years prior to the time
this controversy arose been importers of macaroni.
They did not wish to be known as being in this business; therefore they transacted the macaroni business through the Merchants' National Importing
Company as their agent.  The proof shows that John
Munroe & Co. actually owned all the macaroni consigned to appellee, including that in controversy.
They, however, permitted the Merchants' National
Importing Company to consign the goods as its own.
The latter company was their sole sales agent.  Furthermore, the Merchants' National Importing Company did not act as agent for any other parties except John Munroe & Co.

The rule of law applicable to a case of this kind is
well stated by Lord Mansfield in the early case of
Raybone v. Williams, 7 T. R. 356, as follows: "Where
a factor dealing for a principal, but concealing that

Munroe & Co. v. Adamo.

principal, delivers goods in his own name, the person contracting with him has a right to consider him to all intents and purposes as the principal; and though the real principal may appear and bring action upon that contract against the purchaser of the goods, yet that purchaser may set off any claim he may have against the factor in answer to the demand of the principal. This has been long settled." In Mechem on Sales, vol. 2, sec. 1451, we find the following statement of the rule: "Interesting questions arise in these cases where the agent at the time acted as the ostensible principal and the fact of the agency or the name of the real principal was undisclosed. May the agent here receive payment, and what will be the effect upon the actual principal, if he does? The answer to these questions depends largely upon whether the agent has been intrusted with the possession of the goods or otherwise clothed with the indicia of ownership thereof. If he has, and if, before the purchaser becomes aware that the assumed principal was merely the agent of another, the purchaser has, in good faith and the exercise of reasonable prudence, made payment to the agent, or has acquired an offset against him, such payment or off-set will be operative against the principal." And in the case of Henderson v. Botts, 56 Mo. App. 141, we find the following: "An undisclosed principal takes the contract made by his agent, who was supposed to be the sole principal, subject to all the equities against the agent; and, if the agent has no cause of action on the contract, the principal have none." Another statement of the rule is to be found in 31 Cyc. 1601: "The general rule is that a person contracting with an agent in his own name without notice of the agency may set off a debt to him from the agent personally in an action

by the principal." The above rule, however, does not apply where the third person has notice that the seller is the mere agent of the principal, and that the title of the property is in the principal. Hogan v. Shorb, 24 Wend. (N. Y.) 458.

Applying the doctrine of the foregoing cases to the facts of the case before us, what do we find? In the first place, the Merchants' National Importing Company had possession of the goods in question and had all the indicia of ownership. They were permitted thus to handle the goods by appellants, who did not care to be known as being in the macaroni business. There is not a single circumstance in the case going to show that appellee had notice of the mere agency of the Merchants' National Importing Company, or of the fact that the title to the macaroni was in appellants, unless the words stamped upon the invoices must be construed as notice. In the first place, when the goods were received and the sale was completed, appellee did not even have notice of the notation referred to. She did not ascertain that the invoice contained the notation until the following day. At that time the sale had been completed. But even conceding that she did have notice of the notation, was this notation sufficient to show the agency of the Merchants' National Importing Company, or the fact that the title to the goods was in appellants? In all consignments other than the last three, there was no such notation. On those consignments appellee had made payments direct to the Merchants' National Importing Company. On the two next before the last she also made payment direct to that company, notwithstanding the directions contained in the invoice. Of this fact no complaint was made by the Mer-

chants' National Importing Company. Further-
more, John Munroe & Co. are bankers doing busi-
ness in the city of New York. Appellee may have
concluded that the Merchants' National Importing
Company simply desired payment to be made
through John Munroe & Co., and that it wished its
funds to be deposited with that banking institution.
The notation in no wise suggested that the Mer-
chants' National Importing Company was a mere
agent. Indeed, the very contract executed by the
Merchants' National Importing Company and appel-
lee tends to show that the former was the principal,
and that it was importing through its agent in
Europe. The notation on the invoice was not suffi-
cient to overcome this statement in the contract it-
self; it did not state that John Munroe & Co. were the
owners of, or had title to, the macaroni; it was sim-
ply a direction to pay the amount of the invoice to
them. We, therefore, conclude that, even if appel-
lee had notice of the notation at the time of the deliv-
ery of the goods, the notation was not sufficient to ap-
prise her of the agency of the Merchants' National
Importing Company, or of the fact that the goods
were owned by appellants.

But it is insisted that an offset against a claim for
goods sold by an agent for an undisclosed principal,
in order to be available, must have existed at the time
the sale is completed, and that appellee has failed to
bring herself within this rule. It appears that on
March 12, 1908, George Gutig did write the Mer-
chants' National Importing Company. He was un-
able to produce the letter. He swore that he could
not find it. He then testified that it contained a de-
mand for the return of the money accompanied by an
offer to surrender and cancel the stock. There is in

evidence a response to this letter by the Merchants' National Importing Company, written on March 14, 1908, wherein it is said: "Replying to your letter of March 12th, I will look into the matter and see what price I can get for your stock. The general financial situation is such that right at this moment it might be difficult to place it to good advantage. But at any rate I will look into the matter and keep it before me and see what can be done." It is insisted by appellants that this letter shows that the demand for the cancellation of the stock and return of the money was not properly made. The evidence of Gutig, however, shows that it was properly made. He testified without objection to the contents of the letter. If the letter tended to contradict Gutig, appellants should have produced it, or, having accounted for its loss, have introduced evidence to contradict Gutig. Not having done this, we think the evidence sufficient to justify the conclusion of the court that proper demand for the return of the money and surrender of the stock was made within the time prescribed by the contract, and had been made more than thirty days prior to the time that the goods were delivered to appellee, which was on April 20, 1908. That being the case, we conclude that the right of setoff existed at the time the sale of the macaroni was completed.

Lastly, counsel for appellants contend that the judgment should be reversed because there is a discrepancy between the opinion of the court and the judgment based thereon. The judgment directs that the petition be dismissed, while the opinion says that appellants should recover of appellee certain costs, and that appellee is indebted to appellants in the sum of $490. The reason for this seeming discrepancy is due to the fact that the lower court in rendering

its opinion failed to observe that appellee had paid to appellants the $490 in question, and that a receipt for the same had been filed with the papers in the case. As the $490 exceeded the difference between the sum claimed and the amount of the offset, the judgment of the court properly directed that the petition be dismissed.

Judgment affirmed.