MARCONI WIRELESS TELEGRAPH CO. OF AMERICA v. NATIONAL ELECTRIC SIGNALING CO. et al.

(District Court, Eastern District of New York. April 22, 1913.)

1. COURTS (§ 347*)—PLEADING—SET-OFF AND COUNTERCLAIM—CONSTRUCTION OF NEW RULES.

In applying the second paragraph of rule 30 of the new equity rules (198 Fed. xxvii, 115 C. C. A. xxvii), which provides that the answer "must" state any counterclaim arising out of the transaction which is the subject-matter of the suit, and that it "may" set out any set-off or coun-

---

terclaim against the plaintiff which might be the subject of an independent suit in equity against him, the distinction between the mandatory and permissive provisions is not to be observed by defeating an alleged counterclaim or construing it so strictly as to make it fall in the other class from that in which it has been cast, but it should be allowed and considered if the allegations are sufficient to show that it may fall within either, and that, if within the second, it is within the jurisdiction of the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

**2. COURTS (§ 347*)—PLEADING—SET-OFF AND COUNTERCLAIM—CONSTRUCTION OF NEW RULES.**

The second part of such provision does not enlarge the jurisdiction of the court, and a set-off or counterclaim pleaded thereunder must be one "which might be the subject of an independent suit in equity" against the plaintiff, and such as the court could entertain.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

**3. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—SET-OFF AND COUNTERCLAIM.**

In a suit for infringement of a patent the defendant may, under rule 30 of the new equity rules (198 Fed. xxvii, 115 C. C. A. xxvii), and within the reasonable limits of convenience, plead in the answer by way of set-off or counterclaim causes of action for infringement by the plaintiff of other patents relating to the same subject-matter as the one in suit, if independent suits in equity might be maintained thereon.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

**4. SET-OFF AND COUNTERCLAIM (§ 1*)—"SET-OFF"—"COUNTERCLAIM."**

A "set-off" is generally considered to be a matter which will be capable of use as an offset to any recovery by the plaintiff. A "counterclaim" is a matter which is capable of use as a basis for a judgment for relief against the plaintiff, and, of course, may be used as a set-off as well.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases. vol. 2, pp. 1645–1650; vol. 7, pp. 6439–6444; vol. 8, pp. 7620, 7621, 7798, 7799.]

In Equity. Suit by the Marconi Wireless Telegraph Company of America against the National Electric Signaling Company and Samuel M. Kintner and Halsey M. Barrett, receivers. On motion by complainant to strike out counterclaim. Overruled.

Sheffield, Bentley & Betts, of New York City (James R. Sheffield and L. F. H. Betts, both of New York City, of counsel), for complainant.

Herbert G. Ogden, of New York City (F. W. H. Clay, of Pittsburgh, Pa., of counsel), for defendants.

CHATFIELD, District Judge. This action is based upon a charge by the complainant of infringement of United States letters patent No. 837,616, issued to Henry H. C. Dunwoody December 4, 1906, on an application filed March 23, 1906. The answer seeks to interpose a counterclaim in addition to the other defenses by which the defendants charge infringement on the part of the complainant of letters patent No. 706,744, August 12, 1902, No. 727,331, May 5, 1903 (reissued May

26, 1903 under No. 12,115), and No. 731,029, of June 16, 1903. These three patents set forth in the counterclaim are alleged to be the property of the defendants and, it will be noticed, are anterior in date to the patent upon which the complainant has brought suit. The Dunwoody patent has to do with an improved wave responsive or detecting device for wireless telegraph systems, composed of a mass or body of nonmetallic crystalline material. The three other (Fessenden) patents relate to receivers for currents produced by electromagnetic waves— (1) a device or receiver; (2) an improved current actuated wave responsive device by which the conductivity of the receiving circuit shall be changed; (3) a method for utilizing the energy of waves derived from signal waves by means of a body of coherent material. (The above statement of the subject-matter of each patent is intended merely to be a sufficient description for the purposes of this motion, and is not intended as a full reference to the various patents.) Upon this counterclaim the defendants ask an injunction with an accounting, and it necessarily follows that, if successful upon the counterclaim, the amount recovered upon the accounting would be available in diminution or extinction of the amount which the complainant might recover if it were successful, or might result in a judgment in the defendants' favor, over and above the complainant's recovery.

The pleadings in this action have been interposed since the equity rules (adopted by the Supreme Court of the United States in 1912) have been in force, and under rule 33 (198 Fed. xxvii, 115 C. C. A. xxvii) the complainant has made a motion to "strike out" the counterclaim, alleging that the paragraphs of the counterclaim fail to set forth facts sufficient to enable them to maintain the same, and that the allegations are insufficient in law to entitle them to the relief asked. The defendants have stated their alleged counterclaim in the following words:

"As a matter of set-off or counterclaim, arising out of the transaction which is the subject-matter of the complainant's complaint.  *  *  * "

An objection which was raised on this wording (to the effect that the suggested counterclaim on the face of the answer showed that it did not arise from that transaction) having been disposed of upon the argument of the motion, and the defendants having asked leave to modify this language so as to charge the affirmative defense, "either as a counterclaim arising out of the transaction which is the subject-matter of the suit, or as a set-off or counterclaim against the complainant, and which might be the subject of an independent suit in equity against him," it is only necessary to state the grounds upon which the amendment was asked and allowed.

Rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi) requires the defendant to set out his defense to each claim of the bill, and allows as many defenses as may be deemed essential. The second paragraph of this rule then says:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and

such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims."

It will be noted that a counterclaim "arising out of the transaction which is the subject-matter of the suit" *must* be included in the answer. Consideration of the rule and of the subject-matter of the present action indicates that in a suit for infringement of patent the transaction which is the subject-matter of the suit does not mean, on the one hand, the patent rights alone, nor, on the other hand, the particular act of infringement alleged. Either of these might be the transaction in question, but the word "transaction" is broader in scope, yet narrower when applied to the particular set of circumstances from which the relations and rights of the parties have resulted. The same patent might have to do with entirely separate transactions, or the same infringement might result in establishing various rights, contract or otherwise. But the test of determining the transaction from which the suit arose would require a determination of the precise right (and its breach) about which the parties were litigating, and the attendant circumstances which were involved therein.

Rule 30 plainly requires that as between the parties to an equity action involving the steps to such a transaction, and the determination of rights between the parties growing out of the transaction, all claims shall be litigated in one suit, and that thus the matter shall be rendered res adjudicata and future litigation avoided. For this purpose the rule says that such counterclaims must be made a part of the answer in the first suit which calls into question this transaction. On the other hand, the ordinary relations of persons in business and society, whether with respect to a contract, a tort, or, for illustration, a patent, may give a defendant in his opinion a cause of action against the same party who is bringing a bill in equity against this defendant upon some transaction with which the defendant's claim has no point of contact beyond the identity of the parties to the suit.

The words of rule 30 provide that every and any such cause of action may be set off or counterclaimed by the defendant; that is, used by him, if successful, as a subtraction of diminution against the plaintiff's claim if the plaintiff be successful therein, and also available to the defendant for his own relief in case the plaintiff be unsuccessful. The inclusion of such a set-off or counterclaim without the use of a cross-bill is said to have the same effect as a cross-suit, and is made discretionary, or even optional, under the rule. The purpose of uniting independent suits is plainly to facilitate adjustments and to diminish litigation. But the doctrine of res adjudicata should not be invoked against a man, nor should he be charged with laches, for failing to insist upon prosecuting an independent action against some one who might happen to be suing him, if nothing were to be gained, and not even the convenience of witnesses were furthered by so doing.

[1] The distinction, therefore, between the two parts of the second paragraph of rule 30 is not to be observed by defeating an alleged counterclaim, or construing it so strictly as to make it fall in the other class from that in which it has been cast. Technical errors are to be

disregarded. Rule 19 (198 Fed. xxiii, 115 C. C. A. xxiii). The terms "set-off" and "counterclaim" as used in the statute are comprehensive, and do not seem to be intended to be mutually exclusive; that is, to be taken as requiring a matter urged in defense to fall strictly into the one class or the other.

[4] A "set-off" is generally considered to be a matter which will be capable of use as an offset to any recovery by the plaintiff. A "counterclaim" is a matter which is capable of use as the basis for a judgment for relief against the plaintiff, and, of course, may be used as a set-off as well. A counterclaim under the New York Code may arise from the "transaction," or may be "any other cause of action on contract," etc. But all matters of set-off, such as payment or claims for depreciation in value or a release, are considered as other "defenses." Sections 500 and 501, Code of Civil Procedure. But a counterclaim arising from an entirely different contract, and requiring substantially a separate verdict by jury at the trial of the plaintiff's case, goes further than to allow a cross-action upon a patent as a part of the trial of another patent case. A counterclaim falling in either class should therefore be allowed and considered (if the allegations are sufficient to show that it either arises out of the transaction or can be "the subject of an independent suit in equity against" the plaintiff) subject to exceptions which will be considered later. The mandatory requirement, therefore, is but a defense, if a future action should be brought upon a counterclaim which should have been disposed of in the prior litigation. The permissive portion of the rule, however, affords no ground of defense to future litigation, unless the cause of action has been included, and has been determined between the parties.

For this reason, therefore, as has been stated, upon the present motion the defendants have amended their answer, and we have to consider the general objections presented to the combination of four or more patent suits between the same individuals, and in this particular instance related to the same general subject-matter of wireless telegraphy, or some of the devices used in that art, but not upon their face seeming to arise from the same transaction. It may be that the alleged act of infringement by the defendants will prove upon the hearing to have to do necessarily with the very transactions by which the plaintiff is setting up its own rights, and possibly thereby infringing the patent rights of the defendant. But upon the language of the pleadings it would not seem that the motion can be disposed of upon this ground.

The plaintiff points out that between large manufacturers hundreds of infringement actions might be pending upon different patents in widely divergent fields and impossible of classification so as to base thereon any suggestion that the causes of action arose from the same transaction, or even that they had any similarity to one another, beyond being patent cases and being litigation between the same parties. But, under the language of the section, any of these subjects of litigation, if the suit could be brought in equity and could have the same effect as a cross-suit, may be united in one set of pleadings and disposed of at one trial, resulting in but one judgment in favor of the party who

might recover enough to exceed that of his opponent, and involving in this trial a number of decrees or injunctions, in the case of patents, against either or both parties, as the right to the injunction might be shown.

At this point we should consider the language of rule 26 (198 Fed. xxv, 115 C. C. A. xxv), which provides that the plaintiff may join in one bill as many causes of action cognizable in equity as he may have against the defendant. This language is also broad enough to unite a bill to set aside a transfer of real estate as fraudulent, with an action for injunction to prevent the breach of some theatrical contract, and also with an action upon a patent right for damages and an injunction as well. If under rule 26 three such causes of action or 300 if they existed could legally and properly be united, it is difficult to see why, under the provisions of rule 30, any of these 3 or 300 actions could not be united in a bill. Any such cross-suits or counterclaims could be disposed of in the same litigation, inasmuch as the parties were the same, and as to a certain extent the witnesses might have their convenience furthered, even if the convenience of the court be exceedingly strained.

We must therefore go a step further before determining what limitation there is upon either rule 26 or rule 30. It is provided in rule 26 that:

"If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials."

Under rule 30 no such provision for the convenience of the court is inserted. But it may be assumed that entirely distinct or separable controversies, even if contained in one set of pleadings, could be separated upon the trial, and would result in a succession of trials, and, if nec-. essary, in a succession of judgments or decrees, which could be set off or counterclaimed against one another in the issuance of execution or the satisfaction of the judgment.

There is nothing inherently impossible, therefore, and nothing forbidden by the language of the rule; but, on the contrary, the rule would seem to require and direct the union of various litigations existing in equity up to the time of pleading, or, by amendment, up to the time of trial, between the parties to the litigation, and we have to consider what limitations must be observed in this particular application.

[2] It is evident that the Supreme Court cannot by rule confer jurisdiction, and that they have not intended so to do. It is evident that when they say "causes of action in equity," they mean only such causes of action as the court could entertain. We shall not attempt to classify or define the various causes of action of which the United States courts are given jurisdiction by statute, but for the purposes of this motion, and for the interpretation of the section, we shall confine consideration to causes of action which could be heard by the same court as the one acting in a suit brought by a plaintiff for infringement of patent, occurring within this district. Surely a cause of action in equity between the plaintiff and defendant, if both reside in this district, could not be brought in the United States court, unless it arises under the patent laws or some other statute of the United

States giving this court jurisdiction. Manifestly, therefore, only such causes of action could be cognizable in equity under rule 26 in this court, and only such causes of action could be interposed by a defendant as counterclaims and set-offs to an action on a patent.

It has been uniformly held in this circuit and in many other courts of the United States, that an action brought under the patent laws cannot be made to carry with it violations of other rights, of which the court does not have jurisdiction through diversity of citizenship, or under some other statute of the United States. National Casket Co. v. New York & Brooklyn Casket Co. (C. C.) 185 Fed. 533. The new equity rules do not enlarge this limit. Rule 26, except as modified by the necessities of convenience, allows the joinder of as many causes of action as can be properly disposed of and covered by "a final judgment." But these are only such actions as could be brought separately, and rule 26 does not compel the union of dissimilar actions, nor the inclusion in one decree of a number of various kinds of equitable relief, with various sets of accountings.

[3] By analogy, rule 30 seems to be intended to prevent useless litigation and to serve the convenience of parties by providing for the inclusion of as many causes of action (which the court of equity can entertain within its statutory jurisdiction) as could properly be disposed of in one litigation, by cross-suits, and which could be included in the necessary injunction orders and by a complete accounting in one decree. Within reasonable limits of convenience, a charge of infringement of one patent right, with counterclaims alleging infringement of three other patent rights related to the same subject-matter, and involving complications only to the extent of considering a larger number of claims, followed by a decree directing specific orders of injunction, as the case may be, and with a complete accounting as to the causes of action, seems to the court to be, when properly used, within the intent and letter of rule 30. Such a suit could be tested only by the doctrine of convenience and possibility of handling suggested by the provision in rule 26.

This seems to be in accord with the present English practice as shown in the stated case of the Chameleon Patents Manufacturing Co., Ltd., v. Marshalls, Ltd., Reports of Patent, Design, Vol. XVII, No. 19, decided June 13, 1900, in the High Court of Justice, Chancery Division, in which an action for infringement and a counterclaim based upon copyright were disposed of in one trial. A case decided by Judge Dodge, in the District of Massachusetts, March 15, 1913 (Terry Steam Turbine Co. v. B. F. Sturtevant Co., 204 Fed. 103), has to do with an application, under rule 34 (198 Fed. xxviii, 115 C. C. A. xxviii), to set up in a supplemental answer, a counterclaim which the defendant had not included in his original answer. The counterclaim there offered was a so-called equitable tort, and the application might have been denied in the court's own discretion, or on jurisdictional grounds, even though we do not go so far as to repeat the statement that the second part of the language of rule 30, viz., the defendant "may, without cross-bill, set out any set-off or counterclaim," applies only to such counterclaim as is described in the mandatory portion of

the rule; that is, a counterclaim arising out of the subject-matter of the transaction which is the subject-matter of the suit.

Under the former practice, a cross-bill was for discovery or to give "full and complete relief to all parties as to the matters charged in the original bill." Stonemetz Printers' Machinery Co. v. Brown Folding-Mach. Co. (C. C.) 46 Fed. 851, citing Story's Eq. Pl. § 389, and numerous cases. This ruling was followed in Stuart v. Hayden, 72 Fed. 402, 18 C. C. A. 618 (affirmed 169 U. S. 14, 18 Sup. Ct. 274, 42 L. Ed. 639), and in Jackson v. Simmons, 98 Fed. 768, at page 774, 39 C. C. A. 514, and is correct in stating the scope of a "cross-bill" under the old rules. The new rule 30 not only thus does away with a cross-bill, but says that "without cross-bill" any claim which could be the subject of an independent equity suit shall be set out in the answer with the same effect as a "cross-suit," so as to allow a "final judgment" on the "original" and "cross-claims." Here we have a deliberate use of new terms covering any "independent suit in equity," to have the result of a "cross-suit," and yet to be pleaded "without cross-bill" (which is seemingly recognized as the old way of pleading). In the case of the Terry Steam Turbine Co., supra, the court seems to hold that the permissive way of pleading is no broader than the mandatory. If so, it is impossible to give any purposeful meaning to the greater part of the paragraph. However, to go to the other extreme, and hold that all causes of action in equity between the parties and within the court's jurisdiction can be brought in and tried, is evidently not practicable, although the rule seems to be broad enough for this construction. Some restriction should be adopted (under rule 79, 198 Fed. xli, 115 C. C. A. xli) for general limitation, and in each case the court must ultimately determine what issues can be properly disposed of in "a final judgment" in the suit, and order severance accordingly.

In the present case, while difficulty is suggested by the nature of the subject-matter and the number of claims, it does not seem that for a trial without a jury greater difficulty would be found than in disposing of four suits in what might be termed a series, and there seems to be no reason, beyond the court's natural desire to simplify its work, for striking out the counterclaim in the present action. If it should appear that some connection of events brings this counterclaim or the cause of action upon the defendant's patents into the category of matters arising "from the same transaction" as the plaintiff's own cause of action, then assuredly the court should not force the parties into the possible position of having their rights in the future shut off by the mandatory language of the first part of the section.

For all these reasons, therefore, the motion will be denied.