SYDNEY v. MUGFORD PRINTING & ENGRAVING CO. et al.

(District Court, D. Connecticut. May 27, 1914.)

No. 1383.

1. COURTS (§ 347*)—EQUITY RULES—BILL—SET-OFF—COUNTERCLAIM.

The new Equity Rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi), providing that a defendant may set out in his answer any set-off or counterclaim against plaintiff which might be the subject-matter of an independent suit in equity against him, did not affect or change the substantive law providing what could be treated as a set-off or counterclaim, as it existed prior to the taking effect of the rules.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

2. SET-OFF AND COUNTERCLAIM (§ 9*)—MATTERS AVAILABLE—STATE LAW.

Under the Connecticut law, a defendant can only set up matters as a counterclaim which are so connected with the matter in controversy that their adjudication is necessary for the determination of the rights of the parties thereto.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 12; Dec. Dig. § 9.*]

3. PRINCIPAL AND AGENT (§ 143*)—UNDISCLOSED PRINCIPAL—RIGHTS.

An undisclosed principal may appear and hold the other party to a simple contract made with the agent, and where a third person, who has contracted with an agent in ignorance of the fact that the agent is not the real principal as he assumed to be, has sued on the contract by the undisclosed principal, such third person may avail himself of every defense which existed in his favor against the agent at the time the principal first demanded fulfillment of the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 502–512; Dec. Dig. § 143.*]

4. CONTRACTS (§ 190*)—PARTIES—PERSONAL SERVICES.

Where a person contracts with another for the latter's personal services, the latter may be held to a strict performance of the services he has contracted to perform, and the former cannot be forced to accept the services of another in substitution therefor.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 834, 903½; Dec. Dig. § 190.*]

5. PRINCIPAL AND AGENT (§ 143*)—CONTRACTS—UNDISCLOSED PRINCIPAL.

Where it clearly appears either from the terms of an agreement or from the attendant circumstances that a contract was exclusively with an agent personally, an alleged undisclosed principal cannot become a party thereto nor maintain a suit thereon.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 502–512; Dec. Dig. § 143.*]

6. SET-OFF AND COUNTERCLAIM (§ 41*)—AVAILABILITY—RESCISSION OF CONTRACT—BREACH OF DIFFERENT CONTRACT.

In a suit in equity against a corporation by an undisclosed principal to enforce a rescission of a sale of the company's shares and a return of the purchase money on the ground that the value of the stock was misrepresented to her agent, who she claimed purchased the stock for her benefit,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

the corporation could not plead as a set-off or counterclaim damages which accrued to it because of the incompetency, unskillfulness, and negligence of the agent whom it employed in its business under a contract negotiated by him at the time he purchased the shares; the corporation believing at that time that he was purchasing for his own benefit and paying for the stock with his own money, there being nothing to show that with reference to the contract of employment he represented complainant, or in making the contract of employment agreed to perform any duty that complainant was bound to perform.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 76–79, 81; Dec. Dig. § 41.*]

In Equity. Suit by Ada M. Sydney against the Mugford Printing & Engraving Company and others. On motion to strike defendants' equitable defense of set-off and counterclaim. Granted.

Henry & McGraw, of Cleveland, Ohio, and Joseph L. Barbour, of Hartford, Conn., for plaintiff.

Perkins, Wells & Scott and Elmer H. Lounsbury, all of Hartford, Conn., for defendants.

THOMAS, District Judge. This matter is now before the court on the plaintiff's motion to strike out the "equitable defense, set-off, and counterclaim" which the defendants have appended to and filed in court in connection with their answer.

The plaintiff has brought suit against a corporation, its officers, directors, and certain of the stockholders, on the ground that it and they made certain false statements as to the amount of business which the said corporation was doing, the amount of dividends earned and paid by it on its stock, and its otherwise general successful financial condition, to one H C. Mills, plaintiff's agent, as an inducement to her making purchase of certain shares of stock in said corporation; and that, as a result, plaintiff (who was an undisclosed principal), after making careful inquiry of the defendants, and inspecting the company's plant while in operation, and also its other properties, the true condition of which the defendants were all the time concealing from plaintiff and her said agent, did invest $4,000, of her own money, in the purchase of 160 shares of the capital stock of the said corporation; that after she had ascertained the actual condition of the defendant corporation's business and its financial affairs, and had thereby learned that the statements which defendants had made were false, she had tendered back said shares of stock and certain dividend checks which she had received, to the defendant corporation and certain officers thereof, and had made request for the return of her money which had been refused; and that she then placed the certificates, with a proper power of attorney for the transfer of the same, and all the dividend checks which she had received from the said corporation, in the registry of this court, thereby making tender of the same to the defendants, wherefore she claims, "by way of equitable relief, a rescission of said sale by the order and decree of this court, together with such other and general relief as may to the court seem just and equitable."

The defendants in their said "equitable defense, set-off, and counter-

claim" allege, in substance, that said Mills made purchase of the said 160 shares of stock of the Mugford Company in his own name, and at no time disclosed that he was acting for the plaintiff or any person other than himself; that he falsely claimed to be a man of considerable financial means and willing to become connected with the defendant coropration as a stockholder therein, provided the corporation would engage him as superintendent and manager of its photo engraving department; that he likewise falsely stated that he had had some 20 years of experience in the business of photo engraving, was thoroughly competent to work at that business, and of sufficient ability to manage its said department; and that, if employed, he would so manage its said department as to cause it to be of a much larger source of profit than it had theretofore been; that the defendant corporation was induced thereby to engage said Mills as superintendent and manager of its said photo engraving department, after he had first obtained its promise thereto as a condition precedent to his purchasing the said 160 shares of stock; that said Mills was the superintendent and manager of its photo engraving department from November 19, 1912, to May 6, 1913, during which time it paid him a salary of $40 per week, but, because of his incompetency and his negligent or unwise methods during said time, he had succeeded in disorganizing the said part of defendants' business and caused it to lose a very large number of customers, and had caused an increased cost in the work of said department to the corporation, with the result that the said corporation sustained a large amount of damage and loss thereby, and was therefore entitled to an equitable counterclaim of $10,000 against plaintiff, for which the said corporation has prayed judgment.

The pleadings in this case are not by any means what might be called "models of the legal draftsman's art," as they are so drawn as to be somewhat confusing; one reading the bill is at a loss to know just which of the defendants, other than the corporation, the plaintiff can expect to hold in view of its prayer for equitable relief. The bill is, in effect, the ordinary complaint for damages arising from a conspiracy to deceive and defraud, and the original claim for relief, which was for damages only, tends to bear out the conclusion that it was originally intended as such. The counterclaim, on the other hand, may be said to have been drawn with a view of benefiting but one of the defendants (the Mugford Printing & Engraving Company), although it purports to have been filed in behalf of all the defendants. However, the court is now called upon to render a decision on the situation which has been presented, by the filing of the counterclaim and the motion to strike out.

By the motion to strike out, plaintiff's attorneys have raised questions which would ordinarily be expected to be raised by a demurrer, were it not for the provisions contained in sections 29, 30, and 33 of the rules of practice for the courts of equity of the United States, promulgated by the Supreme Court on November 4, 1912, and which became effective February 1, 1913, and by which all the rules theretofore prescribed for the regulating of the practice in suits of equity in the Federal Courts, were abrogated. In re Jones (D. C.) 209 Fed. 717.

[1] It is the duty of the court, therefore, to inquire as to what would have been legally sufficient facts to plead in a set-off or counterclaim before the said new rules were adopted, for the court does not apprehend that any one will seriously question the statement that rule 30 (198 Fed. xxvi, 115 C. C. A xxvi) of the new rules was not intended to, nor did it as a matter of fact, in any way effect or change the substantive law relating to what could be pleaded as a set-off or counterclaim, as the same obtained prior to the taking effect of said rules. It seems to the court that the law on this subject remains unchanged and as before. Adamson v. Shaler (D. C.) 208 Fed. 566.

As was said by Judge Geiger in Adamson v. Shaler, supra:

"If rule 30 be given the broad construction permitting a defendant in effect to file an original bill by way of counterclaim, we would have a system whereunder the defendant could answer fully all of complainant's original causes of action, but complainant could in no event assert his right to affirmative relief upon a defendant's original cause of action set out by way of counterclaim. If the rules be considered in the light of the former practice which was foundationed upon the principle that complainant's bill determines the scope of the exercise of jurisdiction, there appears to be no reason for giving to rule 30 any larger office than that requisite to bring about the change so obviously indicated, i. e., that of incorporating in an answer: (1) The matters formerly included in answers proper; (2) matters formerly the subject of auxiliary or cross remedies through cross bills."

The court is aware that the opinion of Judge Chatfield, in Marconi Wireless Telegraph Co. v. National Electrical Signaling Co. et al. (D. C ) 206 Fed. 295, has been considered as taking a somewhat different view of this rule than was taken by Judge Geiger, in Adamson v. Shaler, supra; but a close reading of the Marconi Case will, I believe, justify the conclusion that no very great difference of opinion does in reality exist between these judges in regard to the rule when it comes to an application of it to the same or a similar state of facts.

It will be noticed that Judge Chatfield, in the Marconi Case, permitted the plea of set-off and counterclaim to stand; but it will be further noticed that the subject-matter of that case was that of the infringement of patents, and that the judge merely allowed the parties therein to set off, one against the other, their respective claims as to such infringements, though the patents were issued as of different dates. It seems to me that, even if the pleading in that particular case did not relate to the same transaction, it was so closely connected with the subject of the action which was the basis of the plaintiff's case, as to be inseparable from it, and to be permitted under the practice in Connecticut. Avery v. Brown, 31 Conn. 398.

[2] It is the established rule in Connecticut that, where a counterclaim is set up by a defendant, he is entitled to bring in for adjudication only such matters as are a proper subject of set-off, or such matters as are so connected with the matter in controversy, that their adjudication by the court is necessary for a determination of the rights of the respective parties as to that controversy. Downing v. Wilcox, 84 Conn. 437, 80 Atl. 288.

The Supreme Court of Connecticut, in Downing v. Wilcox, 84 Conn. on page 441, 80 Atl. on page 289, has said that:

Although "courts of equity exercised jurisdiction upon the subject of set-off before the statute of 2 Geo. II which first conferred upon courts of law the power to do so, the enactment of that and following statutes in England and this country made the occasions rare when equity courts were called upon to exercise their jurisdiction. But they retained it, and upon proper occasions exercised it. where the law courts were unable to accomplish what equity demanded by reason of their being circumscribed in their power by the statutes; * * * the existence of this power in our own. (Connecticut) courts of equity was recognized before the adoption of the (Connecticut) practice act, and of course was not lost by its adoption. * * * The right of set-off, whether legal or equitable, has always been confined to rights of action arising from contract." And that claims arising out of tort have never been brought within its application.

The main question herein presented for decision is: Can a defendant corporation against which a suit in equity has been brought by an undisclosed principal who claims a rescission of a sale of stock shares and return of the purchase money and interest thereon, on the ground that the value of said stock was misrepresented to her, plead, as a ground of set-off and counterclaim, damages which accrued to it because of the incompetency, unskillfulness, negligent, and unwise acts of a person whom it employed in its business, under a contract entered into by it and that person, although, as a matter of fact, the person thus employed was at the time the agent of the plaintiff, in negotiating for the purchase and sale of the said stock shares which the corporation issued to and in the name of said agent personally (while believing that he was acting for himself, and was paying for the stock with his own money, as he had claimed), where it is not alleged in the said counterclaim, or otherwise made to appear, therefrom, that the said person thus employed was the representative of the plaintiff in the matter of the contract of employment, or that, with the plaintiff's knowledge and consent, he undertook, by entering into said contract of employment, to perform a duty which plaintiff was bound to perform, although it does appear by the pleading that the defendant corporation would not have employed the said agent but for the fact that he made the said false statements and purchased the said stock shares in his own name?

[3] The rule is elementary that an undisclosed principal may appear and hold the other party to a simple contract made with the agent (Sullivan v. Schailer, 70 Conn. 733, 40 Atl. 1054; Foster v. Graham, 166 Mass. 202, 44 N. E. 129; Ford v. Williams, 21 How. 287, 16 L. Ed. 36, and that where a third person, who has entered into a contract with an agent in ignorance of the fact that the agent was not the real principal as he assumed to be, is sued upon the said contract by the undisclosed principal, the third person may avail himself of every defense which existed in his favor against the agent, at the time the principal first demanded fulfillment of the contract (Huntington v. Knox, 7 Cush. [Mass.] 371).

The reason of the rule which permits the principal to bring such cases in his own name is that he is entitled to the ultimate benefit of the contract which was made by his agent, so, in seeking to recover that benefit, he must assume the position of the agent whose contract he is endeavoring to enforce, and the action so instituted by him is open

to those defenses which might have been interposed to the suit if it had been brought by the agent at the time the principal first sought to enforce the contract. Story on Agency, § 340; Mechem on Agency, §§ 769–773.

[4, 5] A person, however, has the right always to choose with whom he shall contract, and another person should not be thrust upon him against his expressed will. Therefore, where a person contracts with another for the personal service of that other, the person so contracting can hold the other party to a strict performance of the services he contracted for, and cannot be forced to accept the services of another in substitution therefor, and, where it is clearly shown, either from the terms of the agreement or the attendant circumstances, that the contract was exclusively with the agent personally, the principal does not become a party thereto, and cannot maintain a suit upon it. Sullivan v. Schailer, supra.

[6] Notwithstanding the elaborate discussion of the subject contained in the very excellent brief filed by counsel for defendants, the court is nevertheless constrained to conclude that the authorities therein cited, when read in the light of the circumstances of this case, can have no application thereto, for the court is convinced that in this matter the pleadings disclose two separate and distinct transactions, to wit: One on the part of the plaintiff concerning the purchase and sale of shares of stock by her agent for her benefit and with her money; and the other, a contract made with Mills, personally, whereby his own services were secured for use in the Mugford Printing & Engraving Company's business, as an employé thereof.

The point of distinction between the present case and those cited by counsel as authorities to support the defendant's claim is that whereas in those cases the courts were called upon to decide as to the allowance of certain equities existing between the parties to the controversy, and which were based wholly upon matters either arising out of the same transaction or so connected with it as to be inseparable from the subject forming the basis of the complaints, or were cases where the matters set up in the counterclaims were purely matters allowable in set-off, while in this case the defendants are attempting to set up matter nothing more than collateral to the transaction forming the basis of plaintiff's claim, without attempting in any way to show her connection therewith. This cannot be allowed.

If this were a case wherein the plaintiff was attempting to recover as an assignee of Mills for unpaid salary, the Mugford Company would be in a position to have applied the doctrine set forth in many of the cases cited by the defendants, and made exceptionally clear in Durant Lumber Co. v. Sinclair Lumber Co, 2 Ga. App. 209, 58 S. E. 485; Withers v Greene, 50 U. S. (9 How.) 213, 13 L. Ed. 109; Monroe & Co. v. Adamo, 136 Ky. 252, 124 S. W. 296. See, also, American Sign Co v. Electric Lens Sign Co. (D. C.) 211 Fed. 196. But as the contract which Mills made with that corporation for his personal services must be considered as a separate and distinct transaction entered into by him for his own benefit, and having no direct connection with the negotiations which he has carried out as plaintiff's agent, for the pur-

chase of stock shares, the circumstances of this case are quite unlike those of the cases mentioned.

It may be that at a trial of the case it will be shown that Mills was in fact the principal in both transactions, and not the principal's agent at all; but any conclusion as to that must be left to the evidence which will be produced at the trial, as the court is not now in a position to decide that question. If it should so appear, then the Mugford Printing & Engraving Company will have its proper remedy; but in no event can the plea of set-off and counterclaim as now before the court be invoked to the benefit of the other defendants.

Keeping in mind the facts of this case, and the Connecticut decisions as to the scope which pleas of set-off and counterclaims are entitled thereunder, and the decision in the case of Adamson v. Shaler, supra, and Terry Steam Turbine Co. v. Sturtevant Co. (D. C.) 204 Fed. 103, it would appear that the motion to strike out defendant's special defense and counterclaim should be granted.

Let an order to that effect therefore be entered.