BUFFALO SPECIALTY CO. v. VANCLEEF et al.

(District Court, N. D. Illinois, E. D.  September 16, 1914.)

No. 219.

COURTS (§ 354*)—PROCEDURE—SET-OFF OR COUNTERCLAIM—EFFECT OF DIS-
MISSAL OF BILL.

The provision of new equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi)
that the answer may "set out any set-off or counterclaim against the
plaintiff which might be the subject of an independent suit in equity
against him and such set-off or counterclaim so set up shall have the
same effect as a cross-suit" is to be given a liberal construction, and in-
cludes, as it in terms states, "any" set-off or counterclaim which might
be the subject of an independent suit in equity; and the same, when
pleaded, being in effect a "cross-suit," is not affected by a decree dis-
missing the bill on the merits. Whether such a decree is a final one, re-
viewable by appeal before adjudication upon the set-off or counterclaim,
quære.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 934; Dec. Dig.
§ 354.*]

In Equity. Suit by the Buffalo Specialty Company against Noah
Vancleef and others. On motions by defendant for injunction and a
reference. Denied.

Offield, Towle, Graves & Offield, of Chicago, Ill., for plaintiff.
Banning & Banning, of Chicago, Ill., for defendants.

SANBORN, District Judge. This is an application by defend-
ants for an injunction, based on defendants' counterclaim and affida-
vits, restraining plaintiff from making false representations concerning
the order or decree of August 7, 1914, dismissing the bill for want of
equity, with costs, and from interfering with defendants' business of
making and selling "Neverleak Tire Fluid." They also ask a reference
to a master to ascertain the profits and damages they claim to be en-
titled to, as prayed in their counterclaim.

The bill, which was dismissed, alleged infringement of a trade-mark
and unfair competition. Defendants denied plaintiff's allegations, and
pleaded a counterclaim under equity rule 30, alleging wrongful acts of
plaintiff in reference to the use by defendants of the trade-mark or
name claimed by plaintiff, and praying for an injunction against such
acts, and an accounting of damages. Defendants alleged that plaintiff
was threatening their customers with suits and various forms of prose-
cution in case they should continue to market their own goods.

Defendants moved to dismiss the bill because it appeared on the rec-
ord that complainant had by its conduct made its right to use the word
"neverleak" coextensive in time with its patent on the fluid called never-
leak, and by the expiration of the patent had lost its protection. The
motion was granted, and a decree of dismissal followed, without mak-
ing any disposition of the counterclaim. An appeal from this decree to
the Circuit Court of Appeals was at once taken, and is now pending un-
determined; the clerk's return to the appellate court having been duly
made. Defendants then, before any hearing on the counterclaim,

moved for a permanent injunction and reference, just as though they had obtained an interlocutory decree on hearing, showing by affidavit that plaintiff had begun several suits against customers of defendants, had written threatening letters to defendants' dealers, and had misrepresented the nature of the decree of dismissal. These acts were injurious to defendants, causing loss of custom and other damage. While the motion was for a permanent injunction and reference, on the hearing they asked for a temporary injunction only, and did not press the motion for reference.

Answering the motion, plaintiff denied any unfair competition (submitting many affidavits), and contended that the district court has no jurisdiction of the motion because the case and the whole case has been removed to the Court of Appeals. Counsel for defendants contend that the case involves two separate suits, one on bill and answer for trade-mark infringement and unfair competition, and the other on counterclaim and reply for unfair competition, and that only the first suit has been finally disposed of, leaving the second one still pending just as though the first had never been.commenced. It is contended in reply to this position that the counterclaim authorized by rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi) is like a cross-bill in equity under the former practice, which was so connected with the bill that a dismissal would necessarily carry the cross-suit with it. It was also suggested on the argument that a counterclaim under the rule is so connected with the main suit that the decree already entered was not a final one, for the purpose of an appeal, because it made no disposition of the counterclaim.

Many questions are being raised in the district courts as to the proper construction of rule 30, and there has been conflict of opinion which will probably continue. As I look at the matter, the rule is quite clear and easy to interpret. It is quite similar to section 3 of order 19 of the English orders (Statutory Rules and Orders of 1912, p. 1781; Annual Practice of 1908, p. 234). The two rules follow:

English rule:

A defendant in an action may set off, or set up by way of counterclaim against the claims of the plaintiff, any right or claim, whether such set-off or counterclaim sound in damages or not, and such set-off or counterclaim shall have the same effect as a cross-action, so as to enable the court to pronounce a final judgment in the same action, both on the original and on the cross claim. But the registrar or the judge may, on the application of the plaintiff before trial, if in opinion of the registrar or judge such set-off or counterclaim cannot be conveniently disposed of in the pending action, or ought not to be allowed, refuse permission to the defendant to avail himself thereof.

Equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi):

The defendant in his answer shall in short and simple terms set out his defense to each claim asserted by the bill, omitting any mere statement of evidence, and avoiding any general denial of the averments of the bill, but specifically admitting or denying or explaining the facts upon which the plaintiff relies, unless the defendant is without knowledge, in which case he shall so state; such statement operating as a denial. Averments other than of value or amount of damages, if not denied, shall be deemed confessed, except as against an infant, lunatic, or other person non compos and not under guardianship, but the answer may be amended, by leave of the court or judge,

upon reasonable notice, so as to put any averment in issue, when justice requires it. The answer may state as many defenses, in the alternative, regardless of consistency, as the defendant deems essential to his defense. The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit, both on the original and cross-claims.

It will be seen that rule 30 requires defendant to set up any counterclaim which arises out of the transaction forming the subject-matter of the bill, but allows without requiring him to set up any equitable counterclaim or set-off which might be the subject of an independent suit by defendant against plaintiff. The language is perfectly clear: If defendant has an independent cause of action in equity against plaintiff, he may counterclaim it. If any corroboration of this view were needed, it is found in the fact that the Supreme Court, in adopting the rule, omitted the last clause of the English rule which restricts counterclaims to those which can be conveniently disposed of and those which ought to be allowed. Not only was any set-off or counterclaim which may be the subject of an independent suit included, but an exception was rejected. Moreover, it has always been held by the English courts that independent causes of action, wholly unconnected with the claim of the plaintiff, may be counterclaimed. Birmingham Estates Co. v. Smith, 13 Ch. D. 506, 509. Nor is a counterclaim to be excluded because plaintiff is a foreigner who could not be sued in England. By invoking the jurisdiction, he consents to be sued there by counteraction, unless plaintiff be a sovereign, not suable without its consent. Griendtovan v. Hamlyn & Co., 8 L. T. R. 231; Strousberg v. Costa Rica Republic, 29 W. R. 125, Ch. App.; Imperial Japanese Govt. v. P. & O. Co., (1895) A. C. 644, P. C. Nor is the amount recoverable by counterclaim limited by the jurisdiction of the court (Amon v. Babbett, 22 Q. B. D. 543, Ch. App.), unless objection is made by giving written notice, as required by the Judiciary Act of 1873. By adopting the English rule, its construction in England is adopted, at least to the extent of excluding construction at variance with plain and explicit language. Under such circumstances, the clear meaning of the words should not be rejected on account of supposed inconvenience in applying the rule.

It is said in argument that it could not have been the intention of the rule to compel a nonresident plaintiff to submit to cross-suits in districts foreign to his residence, and thus run counter to express statutes, like section 51 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]), or the Act of March 3, 1897, c. 395, 29 Stat. 695 (U. S. Comp. St. 1901, p. 588), relating to place of suit. Section 51 provides that civil suits, other than those of diverse citizenship, shall only be brought in the district where defendant inhabits, the others only in the district of the residence of either party. The act of 1897 applies only to patent cases, and provides that the court shall have jurisdiction only in the district where defendant inhabits, or where he has committed infringement and has an established place of business. But these acts do not relate to the general jurisdiction of

the district court, only to the power of the particular court to proceed. They give defendant a privilege which he may waive. If the counter-claim defendant (original plaintiff) raises the question of jurisdiction at the outset, and succeeds, defendant may have a speedy decision of this question by the Supreme Court. Whatever the decision may be affects the scope of rule 30, not its construction.

It is true that the weight of authority in the construction of the new rule limits its scope to counterclaims which might formerly have been made the subject of a cross-bill. Terry Steam Turbine Co. v. B. F. Sturtevant Co. (D. C.) 204 Fed. 103; Williams, etc., Co. v. Kinsey Mfg. Co. (D. C.) 205 Fed. 375; Adamson v. Shaler (D. C.) 208 Fed. 566; Klauder v. Weldon, etc., Co. v. Giles (D. C.) 212 Fed. 452; Sydney v. Mugford, etc., Co. (D. C.) 214 Fed. 841. To the contrary are Marconi Wireless Tel. Co. v. National Elec. Signaling Co. (D. C.) 206 Fed. 295; Salt's Textile Mfg. Co. v. Tingue Mfg. Co. (D. C.) 208 Fed. 156; Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 208 Fed. 419; and Electric Boat Co. v. Lake Torpedo Boat Co., 215 Fed. 377. The cases supporting a limited application of the rule proceed upon the theory that it was not intended to change the substantive law providing what could be treated as a set-off or counterclaim prior to the rule (Judge Thomas, 214 Fed. 841), and that the words "shall have the same effect as a cross-suit" mean to limit the counterclaim to what might have been brought in by cross-bill. These words are adopted from the English rule, except that "cross-suit" is there "cross-action." Why not give them the settled construction of the English courts? As Judge Chatfield says in the Marconi Case:

"Here we have a deliberate use of new terms covering any 'independent suit in equity' to have the result of a 'cross-suit,' and yet to be pleaded 'without cross-bill.'"

The contrary view is strongly argued by Judge Dodge in the Terry Case, Judge Geiger in the Adamson Case, and Judge Thomas in the Sydney Case. But the new equity rules were conceived in a most liberal spirit, and I think the one in question should be given its manifest meaning, so as to allow all mutual claims in equity to be set off or opposed, as is done under the English practice. I have examined many English decisions under order 19, and am convinced that the rule has there worked justly. It has been given a broad and liberal construction, but has not been extended (as its terms prohibit) to cases so incongruous as to be incapable of trial with the original suit. Bartholomew v. Rawlings, W. N. 56; Huggons v. Tweed, 10 Ch. D. 359, Ch. App.; Compton v. Preston, 21 Ch. D. 138. Such an exception may also properly be applied under rule 30, since the rule relates only to equitable causes of action. If it would be inequitable to subject the plaintiff to the defense of an incongruous cross-action, surely the court would decline jurisdiction. I am convinced, therefore, that the dismissal of the bill had no effect on the counterclaim for unfair competition. The Electric Boat Company Case contains an able discussion of the construction of the words of the rule.

The effect of the appeal from the decree of dismissal is a different question. I am inclined to think that such decree was not final, and

therefore not appealable. The concluding clause of rule 30, "so as to enable the court to pronounce a final judgment in the same suit both on the original and cross claims," seems to contemplate a single decree disposing of both causes of action. Any other construction would permit two final judgments. In Bowker v. United States, 186 U. S. 135, 22 Sup. Ct. 802, 46 L. Ed. 1090, an admiralty decree disposing of a counterclaim, but not passing on libelant's cause of action, was held not final for the purpose of appeal.

The appeal, however, has been taken, and it is for the appellate court to decide whether it shall be dismissed. And it is unnecessary to decide the question because the affidavits submitted on both sides show that no injunction should be issued. Both parties have exaggerated the effect of the decree in their advertising matter, probably through misconception, and neither has any standing to claim any temporary relief against the other. Of course the motion for reference in advance of adjudication on the counterclaim is premature.

The motions are denied.