ELECTRIC BOAT CO. v. LAKE TORPEDO BOAT CO. (five cases).

(District Court, D. New Jersey. July 7, 1914.)

Nos. 412, 426, 433, 450, 451.

1. PATENTS (§ 310*)—INFRINGEMENT—PLEADING—CLAIMS AVAILABLE—EQUITY RULES—CONSTRUCTION.

Equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi) provides that the answer must state any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set up any set-off or counterclaim against plaintiff which might be the subject-matter of an independent suit in equity against him, and such set-off or counterclaim shall have the same effect as a cross-suit so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims. *Held,* that the word, "cross-bill," was used as synonymous with "cross-suit" and cross-claim so that the limitation on what counterclaims may be set up is not that it must have arisen out of the transaction which is the basis of the original bill, but that the subject-matter is such as might be the subject of an independent suit in equity against the complainant, and hence, in a suit for infringement of a patent, defendant may set up in its answer a counterclaim for infringement by complainant of a different patent unrelated to the transaction and made the basis of complainant's bill.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

2. PATENTS (§ 290*)—INFRINGEMENT—PARTIES.

Since all persons must be made parties in equity who are interested in the controversy, and, as against seasonable objections, a recovery can be had establishing the validity and infringement of patents only in a suit wherein all necessary parties are before the court, a defendant in a suit for a patent infringement cannot set up as a counterclaim complainant's alleged infringement of other patents of which defendant was but a part owner, without joining the co-owner as a party, though defendant had a license from his co-owner.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 470–472; Dec. Dig. § 290.*]

3. EQUITY (§ 39*)—JURISDICTION—EXTENT.
     Where equity has jurisdiction of the subject-matter, it will determine all incidental matters necessary to a final determination of the entire controversy.
     [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 104–114; Dec. Dig. § 39.*]

4. COURTS (§ 263*)—FEDERAL COURTS—JURISDICTION.
     The jurisdiction of a federal court being a limited one, it cannot be extended by uniting a cause of action of which it has no jurisdiction with one within its jurisdiction.
     [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. § 263.*]

5. COURTS (§ 263*) — FEDERAL COURTS — JURISDICTION — EQUITY RULES — "TRANSACTION."
     Equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi) provides that the answer may set up any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, plead any set-off or counterclaim which might be the subject of an independent suit in equity against plaintiff, and such set-off or counterclaim shall have the same effect as a cross-suit, so as to enable the court to pronounce judgment, etc. *Held*, that the word, "transaction," as so used embraced both the right and the breach of it, together with the various occurrences that make up each; and hence, in a suit between citizens of the same state, where complainant sued for infringement of certain patents, defendant was not entitled to set up as a counterclaim damages for unfair competition and alleged malicious prosecution, consisting of matters occurring before the facts on which complainant relied occurred, and independent thereof.
     [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. § 263.*
     For other definitions, see Words and Phrases, vol. 8, pp. 7060–7062, 7818, 7819.]

In Equity. Suits by the Electric Boat Company against the Lake Torpedo Boat Company for infringement of specified patents, in which defendant filed certain counterclaims for complainant's infringement of certain other patents for unlawful competition and malicious prosecution. On complainant's motion to strike out the counterclaims. Granted in part.

Pennie, Davis & Goldsborough, of New York City, for plaintiff.
Gifford & Bull, of New York City, for defendant.

RELLSTAB, District Judge. The parties are citizens of the same state, engaged in a competitive business of manufacturing and selling submarine boats. The bill in each of the five cases alleges infringement of certain letters patent, relating to submarine boats. The answers to said bills, in addition to the usual defenses. set up as counterclaims alleged infringements of other letters patent, relating to submarine boats, malicious prosecution, and unfair competition, and are substantially alike. In connection with such counterclaims the defendant prays, inter alia, that the plaintiff be enjoined from infringing said letters patent; from unfairly competing with it in its business; for an accounting of the profits acquired by plaintiff; and the damages suffered by defendant from the acts set out therein.

The plaintiff moves to strike out the counterclaims and the prayers based thereon on the following grounds: First, that the subject-matters of such counterclaims are not within equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi); second, that, as to some of such patents, defendant is not the sole owner; third, that the subject-matter of the alleged malicious prosecution and unfair business dealings, if a cause of action, is one between citizens of the same state, and not one arising under the Constitution or laws of the United States; and, fourth, that such counterclaims are calculated to embarrass the trial of the action.

[1] As to the first ground: In Motion Picture Patents Co v. Eclair Film Co. (D. C.) 208 Fed. 416, 418, this court noted the difference in the judicial interpretation given to equity rule 30, but, as the conclusion there reached was based on other considerations, no opinion was expressed as to what counterclaims could be set up under such rule. The pertinent part of the rule is as follows:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims."

The diverse interpretations referred to appear in the following cases: Terry Steam Turbine Co. v. B. F. Sturtevant Co. (D. C.) 204 Fed. 103; Adamson v. Shaler (D. C.) 208 Fed. 566; Klauder-Weldon Dyeing Machine Co. v. Giles (D. C.) 212 Fed. 452; Williams Patent Crusher Co. v. Kinsey Mfg. Co. (D. C.) 205 Fed. 375; Marconi Wireless Telegraph Co. v. National Electric Signaling Co. (D. C.) 206 Fed. 295; Salt's Textile Mfg. Co. v. Tingue Mfg. Co. (D. C.) 208 Fed. 156; and Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 208 Fed 419. These were all suits in which the plaintiff sought to enjoin alleged infringements of patents and to obtain an accounting, etc. In the first three cases the courts struck out counterclaims seeking to enjoin alleged infringements of other patents, etc. In the fourth case the court struck out a counterclaim alleging unfair competition in trade, consisting of misrepresentation by complainant of its patent rights and the scope thereof. In the other three cases the courts refused to strike out counterclaims setting up alleged infringement of patents, etc., and unfair business methods. The cases which denied the setting up of the counterclaims proceeded on the idea that only such matters as before the adoption of such rule could be set up by a cross-bill could be made the subject of a counterclaim.

In the Turbine Case, the first of the reported cases dealing with this subject, the learned judge said that the main purpose of the permissive part of the rule was, "to dispense with cross-bills by requiring everything previously done by cross-bill to be thereafter done by answer only." This, in my judgment, is so only as to the mandatory part of the rule, and, as to the permissive or optional part, the main purpose is to enable the defendant by answer to do precisely that which the plaintiff, by rule 26 (198 Fed. xxv, 115 C. C. A. xxv), may do in one bill, viz., "join * * * as many causes of action cognizable in equity as he may

have against the (plaintiff) defendant." This difference as to the main purpose of this part of the rule leads to radically different results. In the former view the term "cross-bill" (drawing to it its previously accepted meaning) is given a controlling effect upon what follows, whereas under the latter view the phrase "without cross-bill" is but a parenthetical one, subordinate in its effect. Dominated by this former view, the learned judge, in the Turbine Case, was led to conclude that no other counterclaims than those covered by the mandatory provision could be set up under the permissive provision of the rule. To so confine the right to counterclaim, in my judgment, is to unduly limit the meaning of the term "cross-bill" as used in such rule, disregard the manifest intent to distinguish between the kinds of counterclaims that must or may be set up in the answer, and to overlook entirely the plain purpose of the new rules to permit the parties to settle their differences in one suit, provided they can be conveniently disposed of together.

Under the old system of pleading, a cross-bill was necessary to obtain for the defendant affirmative relief touching the matter of the original bill. A cross-bill, however, was not permitted unless it was based on or grew out of the subject-matter of the original bill. It was treated as a mere auxiliary suit or as a dependency upon the original suit. Story's Eq. Pl. §§ 389, 399; Shipman's Eq. Pl. §§ 210, 211; Morgan Co. v. Texas Central Ry. Co., 137 U. S. 171, 200, 11 Sup. Ct. 61, 34 L. Ed. 625; Harrison v. Perea, 168 U. S. 311, 320, 18 Sup. Ct. 129, 42 L. Ed. 478.; Stonemetz, etc., Co. v. Brown, etc., Co. (C. C.) 46 Fed. 851; New Departure Bell Co. v. Hardware Specialty Co. (C. C.) 62 Fed. 462; Weathersbee v. American, etc.; Co. (C. C.) 77 Fed. 523; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 26 C. C. A. 389; Hogg v. Hoag (C. C.) 107 Fed. 807; 16 Cyc. 331.

The "counterclaim arising out of the transaction which is the subject-matter of the suit," and which, under the rule, must be set up in the answer, covers broadly stated, all matters which heretofore could have been pleaded by cross-bill. Therefore to limit the option given to the defendant to "set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him" to such claims as must be set up is to make the option fruitless. Marconi Wireless Telegraph Co. v. National E. S. Co. (D. C.) supra, 206 Fed. at page 302.

The distinction made in the rule between a "counterclaim arising out of the transaction" forming the basis of the original suit and one "which might be the subject of an independent suit," brought by the defendant against the plaintiff, is the primary and influential distinction between what could be set up by a cross-bill and what could not. The provision that the claims arising out of such transaction must be set up in the answer is intended to put an end in one suit to all the controversies that arise out of such subject-matter, legal (see rule 23 [198 Fed. xxiv, 115 C. C. A. xxiv], also new) or equitable; and the provision that the independent equitable causes of action may be so set up is intended to permit the defendant to litigate in the same suit

all independent causes of action, of an equitable nature, to the same extent as the complainant might in the first instance under rule 26. In the presence of such manifest intent, to adhere to the technical meaning of the term "cross-bill" is to attribute to the framers of the rule a meaning in irreconcilable conflict with the context. Such term is perhaps unfortunate, both as to words and position, but it is clear from the context that it is to be understood as a synonym of "cross-suit" and "cross-claim." Therefore the limitation upon what counterclaim may be set up is not that it must have arisen out of the transaction which is the basis of the original bill, that character of counterclaim having been already completely covered by the preceding clause, but that the subject-matter thereof be such as "might be the subject of an independent suit in equity" against the plaintiff.

Rule 26 (also a new rule) authorizes the plaintiff to "join in one bill as many causes of action cognizable in equity as he may have against the defendant," and a proper construction of rule 30 gives the defendant the same option; thus both parties are, in the matter of joining causes of action, placed on an equal footing. In the case of the plaintiff so joining, the court, by express authority contained in the concluding sentence of rule 26, is given discretion to order separate trials if it appears that such "causes cannot be conveniently disposed of together." In case the joinder is the result of the defendant's action, the court has a like discretion. Rule 30 declares that such counterclaim "shall have the same effect as a cross-suit," and by analogy, if not by necessary implication, the defendant in such cross-suit is to be treated as a plaintiff, and the joinder of different causes of action by him in one suit is subject to the court's power of ordering separate trials if they "cannot be conveniently disposed of together."

In Adamson v. Shaler, supra, the learned judge, following closely the view of the court in the Turbine Case, supra, advanced another thought which seemed to him to support their conclusions that only such counterclaims could be pleaded as formerly might have been introduced by cross-bill. He said (208 Fed. at page 568):

"If it were intended by rules 26 and 30 to enlarge the scope of equitable procedure by permitting answers to incorporate causes of action not related nor germane to the subject of the bill, then rule 31 [198 Fed. xxvii, 115 C. C. A. xxvii], would naturally have the necessary provisions to enable a plaintiff to obtain such affirmative relief as, were the counterclaiming defendant proceeding by original bill, the complainant could obtain, formerly by cross-bill, now by counterclaim. For example, in the case already referred to, a citizen of Illinois suing a citizen of Wisconsin upon a cause of action for foreclosure, the latter might, under the broad construction claimed for rule 30, set up by counterclaim a cause of action for specific performance of a contract wholly unrelated to the subject-matter of the bill. Must the plaintiff, because of the limitations of rule 31 forego, for instance, his right to relief by way of reformation which he could formerly have asserted through cross-bill? Is there any way whereby a plaintiff through a 'reply' to such counterclaim can obtain affirmative relief? It would seem not; the effect of the rule is plainly to determine the point when and how an issue for trial upon the merits is created. Thus, if rule 30 be given the broad construction permitting a defendant in effect to file an original bill by way of counterclaim, we would have a system whereunder the defendant could answer fully all of complainant's original causes of action, but complainant could in no event assert his right to affirmative relief upon a defendant's original cause of action, set out by way of counterclaim."

But, if the defendant, as to his counterclaim setting up an independent cause of action, is treated as plaintiff in such cross-suit, a result necessarily contemplated by permitting cross-actions in the same suit, the plaintiff, now defendant, may reply by answer or counterclaim, or both, under rule 30. Rule 31 eliminates a reply upon the part of the plaintiff in the original suit unless the answer "asserts a set-off or counterclaim." Necessarily, the "reply" contemplated by rule 31 transcends the scope of the "replication" used when the defendant's pleading was limited to the controversy forming the basis of the plaintiff's complaint, and includes that which would be an answer and counterclaim under rule 30. Thus construed, the incongruity referred to by the learned judge in the concluding paragraph of the quoted excerpt does not exist.

In my judgment, rule 30, whether read alone or in the light of the other new rules, requires, subject to jurisdictional limitations to be presently considered, an interpretation permitting the defendant to set up against the plaintiff counterclaims unrelated to the transaction made the basis of the plaintiff's bill, provided they "might be the subject of an independent suit in equity against him." Under such interpretation, the first ground of the present motion is untenable and the counterclaims must stand, unless incompetent for other reasons.

[2] As to the second ground, that defendant is not the sole owner of some of the patents: This relates to the independent causes of action founded on three several letters patent. Of these the defendant is the sole owner of but one. As to the other two Lake patents, it answers:

"That this defendant and Simon Lake, not a party to this suit, are now the lawful owners of said patents and inventions and all rights thereunder, and have been continuously since prior to the infringement thereof by the plaintiff."

In its brief, defendant asks leave to amend its answer in this particular to allege that it has an exclusive license from Simon Lake "for all government work"; and it contends that:

"Since that [government work] is the only work complained of in the bill of complaint, and the only work complained of in these counterclaims, it will be seen that it is only the rights of the defendant (not the rights of Lake) which plaintiff, it is alleged, has invaded."

The matter of the amendment, however, does not change the status of the defendant to maintain a suit to enjoin an infringement of such Lake patents. The license conveys no title to such patents, and the defendant is still only a part owner. True, by such license it secured additional rights as against the other part owner, but neither such rights nor such part ownership enables it to alone maintain a suit upon such patent against the present plaintiff.

"The general rule as to parties in chancery is that all ought to be made parties who are interested in the controversy, in order that there may be an end of litigation." Williams v. Bankhead, 86 U. S. (19 Wall.) 563, 571 (22 L. Ed. 184).

In the present case, notwithstanding such license, it being exclusive only as to a particular kind of work, the licensor has a vital interest in

maintaining the validity of the patents and the scope of the claims here sought to be put in issue. His contractual relations with his co-owner, whether determined by the patent or the license thereunder, in no wise authorize his co-owner and licensee to jeopardize his statutory monopoly. On the other hand, the alleged infringer has a right to be protected against unnecessary or multiplied suits. If one owner, not a party to the suit, cannot be bound by the result of the litigation instituted by his co-owner and licensee, neither should the alleged infringer be harrassed by such litigation. Being a joint owner, and having such license from the other part owner, defendant is entitled, as between it and the other owner, to the sole enjoyment of the profits and damages that may be secured in certain suits for infringement. But such benefit is only incidental to the main controversy, viz., validity of the patents, and the scope and infringements of their claims, and, as against objections seasonably interposed, can be recovered only in a suit wherein all the necessary parties are brought before the court. Walker on Patents (4th Ed.) § 399; Paper-Bag Cases, 105 U. S. 766, 26 L. Ed. 959; Pope Mfg. Co. v. Gormully, etc., Co., 144 U. S. 248, 12 Sup. Ct. 641, 36 L. Ed. 426; Van Orden v. Nashville (C. C.) 67 Fed. 331; Postal Tel. Cable Co. v. Netter (C. C.) 102 Fed. 691; Bowers Hydraulic Dredging Co. v. Vare (C. C.) 112 Fed. 63; Excelsior Wooden Pipe Co. v. City of Seattle, 117 Fed. 140, 55 C. C. A. 156; Milwaukee Carving Co. v. Brunswick-Balke-Collender Co., 126 Fed. 171, 61 C. C. A. 175; De Forest v. Collins Wireless Telephone Co. (C. C.) 174 Fed. 821; Snead v. Scheble, 175 Fed. 570, 99 C. C. A. 578.

As the right to counterclaim under the permissive provision of rule 30 depends upon the defendant's right to bring an original suit against the plaintiff, and as all the necessary parties to maintain such suits on the Lake patents are not before the court, the counterclaims, so far as the Lake patents are concerned, are not maintainable in this proceeding, and must be struck out.

As to the third ground, that if the alleged malicious prosecution and unfair business dealings, is a cause of action, it is one between citizens of the same state, and not one arising under the Constitution or laws of the United States: The alleged malicious prosecutions, as set up, are but steps in the charge of unfair competition; and as the federal court's jurisdiction over such causes of action depends upon diversity of citizenship (Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145, 32 L. Ed. 529; Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Leschen & Sons v. Broderick & Bascom, 201 U. S. 166, 26 Sup. Ct. 425, 50 L. Ed. 710; Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536), nonexistent in this suit, the counterclaims based on such unfair methods cannot stand unless they arise "out of the transaction which is the subject-matter of the suit."

[3] A court of equity having jurisdiction of a subject will comprehend within its grasp and decide all incidental matters necessary to enable it to make a full and final determination of the whole controversy, and thus terminate litigation while it facilitates the remedies. McGowin v. Remington, 12 Pa. 56, 51 Am. Dec. 584; 1 Pomeroy's Eq.

Juris. (3d Ed.) § 241;· Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 266, 26 C. C. A. 389.

[4] The federal court's jurisdiction being a limited one, however, it will not be extended by uniting a cause of action of which it has no jurisdiction with one of which it has. National Casket Co. v. New York & Brooklyn Casket Co. (C. C.) 185 Fed. 533.

[5] The unfair competition counterclaims, therefore, are cognizable in this suit only if they. are incident to the controversy underlying the plaintiff's suit, or, in the words of the mandatory provision of rule 30, if they arise "out of the transaction which is the subject-matter of the suit." Regardless of what is new in rule 30, a court of equity has the power to investigate and determine all matters incidentally involved in the main controversy between the parties. However, while it has the power so to do, how much of this power is to be exercised depends largely upon the pleading of the defendant. If he is content with a dismissal of the bill, none of the incidental matters calling for affirmative relief would arise, and therefore they would remain undetermined. As to these, if the defendant is not estopped from making them the subject of an independent suit, such relief could be secured in another action. Rule 30, however, has put an end to such multiplication of suits, and the defendant is now required to raise such incidental issues in the same suit, under the pain of being barred thereafter from asking any affirmative relief based thereon. Thus the judicial invitation to settle all matters arising out of the transaction sued upon is now a requirement. This mandatory provision, however, is limited to "the transaction which is the subject-matter of the suit," so that whenever the defendant in a federal court conceives himself entitled to relief from the plaintiff, which relief is not obtainable under a strict defense, and which, in view of the limited jurisdiction of such court, he cannot interpose as an independent equitable cause of action in such court, the test whether such relief can be obtained in such suit by counterclaim in reality is, Can the defendant be barred from seeking relief thereon in another proceeding, if he fails to demand it in such action? If he would be so barred, the plaintiff can be compelled to meet it in his suit. The defendant, conceding that because of the. lack of diversity of citizenship such· counterclaims are cognizable in this suit only if they arise out of the transaction underlying the plaintiff's bill, contends that they do arise out of such transaction. "Transaction" is a word of comprehension. In litigation it usually embraces both the right and the breach thereof, and the various occurrences that make up each. Its scope, however, depends upon the company it keeps —the context.

In the rule under consideration, the transaction "is the subject-matter of the suit," and as the determination of what is the transaction in a given case may settle whether in such case the court has jurisdiction over such interposed cause of action, it is essential that no more be put into litigation under such mandatory provision of the rule' than falls properly in the occurrences which make up such transaction. No rule of court is to be so read as to confer jurisdiction over causes not cognizable in the United States courts, and care must be taken that in the

endeavor to determine the controversy authorized by rule 30 no more is comprehended than could be litigated by the parties in the suit then pending in that particular court. Marconi Wireless, etc., v. Nat'l E. S. Co., supra.

As noted, the bills alleged infringement of certain patents. In such a suit, the defendant may interpose as a defense, not only any matter that would destroy the validity of the patents or the claims sued upon, but also that which estops the plaintiff from maintaining such suit. The defendant having the opportunity by strict answer to attack the plaintiff's right to or the scope of his alleged monopoly, a right, it is to be observed, in no way depending upon any transaction with the defendant, the transaction referred to in the rule, so far as patent litigation is concerned, would seem to be limited to the occurrences that relate only to the alleged infringements. If the conduct of the plaintiff, other than that relating to the infringement, impinges upon the legal rights of the alleged infringer, while it is liable to an independent action for such conduct, it is not compelled to respond to a counterclaim interposed to its suit for such infringement, for such a counterclaim does not grow or arise out of the transaction which is the subject-matter of that suit.

Having ascertained the meaning to be given to the word "transaction" in the mandatory part of rule 30, and the test to be applied in determining whether a counterclaim can be entertained under such provision, I turn to the allegations of the answer concerning such counterclaims. In substance, they charge that the present suits, begun in the latter part of 1913, as well as certain other suits begun in the years 1902 and 1903, alleging infringement of other patents, and which were discontinued in the early part of 1913, without having been prosecuted or intended to have been prosecuted to a final conclusion, were malicious prosecutions, and parts of a scheme to injure defendant by preventing it from obtaining contracts for submarine boats, and from performing contracts already obtained, and by preventing it from raising money to pay its obligations and obtain a proper working capital to carry on its business; that at the time such earlier suits were brought, and during their pendency, defendant was seeking to obtain contracts for the building and selling of boats to the United States government; that such suits were brought and kept pending for the purpose of preventing defendant from obtaining such contracts; that by reason thereof, and the therein falsely asserted infringements, "falsely urged to the officials of the United States," the defendant was prevented "from obtaining contracts or making sales"; that before the beginning of the earliest of such suits the plaintiff published, through the newspaper, its purpose to bring such suits, with the intent of prejudicing the public against the defendant, that its business might be injured; that it has since published numerous articles tending to injure defendant's business, and has made unwarranted charges of infringement by defendant to various agents of the United States government, defendant's only customer in this country, with the intent to prevent it from obtaining contracts from such government, and to injure its business; that plaintiff has unlawfully caused limitations to be inserted in

acts of Congress relating to the purchase of submarine boats, to prevent competition. Several acts of Congress, covering the period from 1893 to 1907, giving a history of congressional action with reference to the purchase of submarine boats, are set forth, coupled with a charge that through the influence of agents of the plaintiff Act June 29, 1906, c. 3590, 34 Stat. 583, which provided for open competition in the purchase of such boats, was amended (Act March 2, 1907, c. 2512, 34 Stat. 1204) so as to hamper competition in the interest of the plaintiff and to the injury of the defendant; that as a result of such unfair and unlawful methods plaintiff has contrived to deprive defendant of business with the United States government, and has unlawfully prevented the sale of defendant's boats to such government, to its great and irreparable damage. From this recital, it is apparent 'that the acts charged relate to the competition between these parties to secure contracts for the manufacture and sale of submarine boats, both being engaged in that line of business, and that while this may furnish a basis for the charge of unfair competition, yet such charge does not arise out of the particular transaction (alleged infringement) which is the subject-matter of the plaintiff's suit.

None of the plaintiff's patents cover a submarine boat in its entirety. Each relates to a special device designed to accomplish a particular function in a distinct operation or movement of a submarine vessel. The charge of infringement is not that the boat made and used by the defendant as a whole is an infringement, but that it embodies the inventions claimed in the respective patents. Assuming that such a cause of action, unfair competition, might find its origin in the transaction covered by such alleged infringement, it is evident that what the defendant has here alleged does not arise out of such transaction, but out of a series of acts embracing alleged infringements of other patents and covering many years of competition in the admittedly limited market for submarine boats.

The infringement suits pending between the parties prior to the institution of the present suits, as noted, were upon other patents. Each patent presents a separate legal right, and infringement of each patent separate and distinct transactions. Compared with the patents involved in the present suits, the transactions which were the subject-matter of the earlier suits were necessarily different. The business methods of the plaintiff which these counterclaims characterize as unfair, according to the allegations of the counterclaims, began prior to the institution of the earliest of such prior suits, and were carried forward during their pendency, and the alleged injuries sustained by the defendant were, according to such allegations, the result of such unfair methods. The very theory of the pleader in these counterclaims is that the present suits are but subsequent steps in an already existing plan to unfairly compete with the defendant. Being such, they cannot be considered as malicious. Aside from the limitation of this mandatory provision of rule 30, it is manifest from the asserted facts that the alleged unfair competition is not an incident of the cause of action alleged in the plaintiff's bill, and necessary to be decided to do complete justice between the parties as to that subject-matter, but that the al-

leged unfairness in such charge of infringement is an incident of the business methods of the plaintiff and which give rise to the charge of unfair competition. The unfair competition alleged, if established, will in no way diminish the right of the plaintiff to a decree in this suit, and will in no way entitle the defendant to any affirmative relief on any matter arising out of the transaction furnishing the basis of either his or the plaintiff's infringement suit. On the face of the defendant's pleading, the conclusion is irresistible that the unfair dealings here alleged cannot be said to arise out of any particular transaction, but out of many, and that, whatever redress the defendant may be entitled to, it can only obtain through a separate and independent suit brought for such purpose. In such a suit, full and complete redress for any wrongdoing established can be secured, while that would be impossible if such charge were cognizable only as a matter growing or arising out of the transaction forming the basis of the plaintiff's suit, as the defendant would be necessarily confined in his proof to such matters as arose out of such latter transaction.

The cases cited, and which furnish the main reliance of the defendant in support of such counterclaims, to wit, T. B. Woods Sons Co. v. Valley Iron Works (C. C.) 166 Fed. 770, and Onondaga Indian Wigwam Co. v. Ka-Noo-No Indian Mfg. Co. (C. C.) 182 Fed. 832, are not in point. In both these cases, the charges of unfair competition were joined in the bill alleging infringement, and were sustained on the ground that they were but different features or parts of the same transaction upon which the charge of infringement was based, and in fact but an aggravation of such infringement. In the case at bar, the charge of unfair competition made by the defendant is not connected with the alleged infringement of its patents, but arises out of a different transaction entirely, viz., the transaction which is the subject-matter of the plaintiff's charge of infringement.

The counterclaims based on unfair competition, for the reasons given, must be struck out.

As to the fourth ground, viz., that such counterclaims are calculated to embarrass the trial of the action: It is sufficient to say that as but one counterclaim or charge of infringement based on the Peacock patent has survived the motion to strike, such ground is without merit.

In addition to striking out the counterclaims based on the Lake patents and the charge of unfair competition, the prayers relating to such counterclaims must also be struck out.