## OBERDORFER v. VANCE.

District Court, E. D. Illinois. June 29, 1929.

No. 166.

Gunn, Penwell & Lindley, of Danville, Ill., and Kent W. Wonnell, of Chicago, Ill., for plaintiff.

Arthur L. Sprinkle and Tine N. Daggett, both of Chicago, Ill., and B. L. Kirk, of Champaign, Ill., for defendant.

LINDLEY, District Judge. To the plaintiff's suit for infringement of patent to Oberdorfer, No. 1,677,362, upon a portable bleacher, the defendant asserts two not unusual defenses, invalidity and noninfringement.

Plaintiff relies only upon claim 3, which is as follows: "In a portable stand structure, a pair of spaced supporting jacks each having pairs of opposite angularly disposed legs, the opposite legs of the jacks being inclined away from each other, and means for bracing and spacing the jacks apart comprising projections at the outer sides of the opposite legs, and a cross bar with slots at the ends of the bar to engage the projections." The record discloses that all of the elements included in this claim are old so far as the art of constructing bleachers is concerned, unless it be the element described as "means for bracing and spacing the jacks apart comprising projections at the outer sides of the opposite legs, and a cross bar with slots at the ends of the bar to engage the projections." The practical effect of the inclusion of this element in plaintiff's combination is to substitute for boards or braces nailed transversely to the jacks or stringers, or otherwise securely fastened to the same, for the purpose of bracing and spacing the same, metal crossbars dropping into slots at either end; the said slots being firmly attached to the jacks. The question of validity, therefore, lies in the question of whether the addition of this detachable bar as a bracer and spacer amounts to invention.

In the art of knockdown bedsteads, scaffolding, and furniture, similar elements are old. The foot and head of the common bedstead are set up and firmly fixed by dropping into slots at either end the so-called rails. Knockdown and detachable structures of various character have known similar elements from time immemorial. Prior to the granting of this patent, the skilled mechanic constructing the portable bleacher had before him a bleacher consisting of the stringers, jacks, and other elements described in the claim, with the exception of detachable braces and

spacers, which would make the structure collapsible. In the old structure this spacing and bracing, as we have said, was accomplished by the nailing of crossbars to the jacks or stringers or both. The mechanic confronted with the problem of replacing this fixed bracing and spacing bar with an element that was detachable so as to achieve the result of detachability or portability, might have used the idea of the bed rail, old in the art. He might have used crossbars attached with heavy, easily removed screws; he might have placed upon each of the jacks a piece of metal containing a hole, and made use of a rod with turned down ends which would drop into the holes, or he might have made use of any one of a number of known removable bars. In this situation it seems to the court that the solution of the problem involved only the exercise of ordinary mechanical skill, and that no invention was achieved.

The language of the Supreme Court of the United States in the case of the Pope Mfg. Co. v. Gormully & J. Mfg. Co. et al., 144 U. S. 254, 259, 12 S. Ct. 643, 645, 36 L. Ed. 426, at page 428, is directly in point. There, in discussing the validity of patents which were alleged to be improvements over the prior art, the court said: "It may be said of both of these patents that they are mechanical adaptations of or variations from what had before been exhibited by the English patents, rather than inventions of anything essentially novel. They appear to involve such immaterial changes as would be required to adapt a known device to use in a combination with other elements already existing, and such as would occur to any skilled mechanic. Indeed, the objects of these patents, and the same remark may be made of all, or nearly all, involved in these suits, seem to have been principally to forestall competition, rather than to obtain the just rewards of an inventor. It is true the defendants make use of devices similar in many particulars to those employed by the plaintiff, but they, too, seem rather to have adopted prior and known devices, and fitted them to the peculiar construction of their machine, rather than to have purloined them from the plaintiff." The court is of the opinion that this language of the Supreme Court is applicable to the present situation. Claim 3 of the patent sued upon is void for want of invention.

There will be a decree dismissing the bill for want of equity at the costs of the plaintiff.